NORMAN H. LEVINE (SBN 061884)
NLevine@GreenbergGlusker.com
RACHEL VALADEZ (SBN 252415)
RValadez@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KASHWERE USAJPN LLC; FLAT BE CO. LTD; SIRIUS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation dba COSTCO USA AND COSTCO JAPAN; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.  CV13-6940 BRO (MANx)**<br><br>*Assigned to Hon. Beverly Reid O'Connell*<br><br>DEFENDANT COSTCO WHOLSALE CORPORATION'S TRIAL BRIEF<br><br>Trial Date: January 13, 2015 |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................2
II. THE ONLY SUBSTANTIVE CLAIM REMAINING IS WHETHER COSTCO'S KASHWERE GOODS WERE TMG/KASHWERE GOODS OR KNOCKOFFS AND COSTCO WILL PRESENT IRREFUTABLE EVIDENCE TO THAT EFFECT..........................................................................................3
III. CLAIMS OF ONLY ONE PLAINTIFF, FLAT BE, REMAIN TO BE TRIED ..................................................................................................8
    A. The Claims of Sirius Are Based on Trademarks Which the Court Has Ruled Cannot be the Basis of a Claim. ...........................................9
    B. Kashwere USAJPN Has No Viable Claim. ............................................9
        1. Lack of Standing................................................................................9
        2. No Damages....................................................................................10
    C. Flat Be, the Only Party Whose Claims Remain to be Tried, is a Japanese Corporation with No Connection to the United States ........12
IV. NO SUBJECT MATTER JURISDICTION EXISTS.........................12
V. CONCLUSION ..................................................................................................18

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*El Greco Leather Products Company, Inc. v. Shoe World, Inc.*,
806 F.2d 392 (2d Cir. 1992) ............................................................... 2, 4, 6

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
286 F.Supp.2d 284 (S.D.N.Y. 2003) ................................................... 2, 4, 8

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
738 F.3d 1085 (9th Cir. 2013) .................................................................. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S.Ct. 1377 (2014) ............................................................................. 10

*Love v. Associated Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) ....................................................... 14, 15, 17

*Pinkberry, Inc. v. JEC Int'l Corp.*,
2011 WL 6101828 (C.D. Cal. Dec. 7, 2011) ............................... 15, 16, 17

*Reebok Intern, Ltd. v. Marnatech Enterprises, Inc.*,
970 F.2d 552 (9th Cir.1992) ..................................................................... 17

*Star–Kist Foods, Inc. v. P.J. Rhodes & Co.*,
769 F.2d 1393 (9th Cir.1985) ................................................................... 14

*TMG Kreations, LLC et al. v. Peter Seltzer; Flat Be Co. Ltd., et al.*, No. 12-
CV-05018 (N.D. Ill.) ............................................................................... 10

*TMG Kreations, LLC v. Seltzer*,
771 F.3d 1006 (7th Cir. 2014) ................................................................. 11

*Trader Joe's Co. v. Hallatt*,
981 F. Supp. 2d 972 (W.D. Wash. 2013) ................................................. 17

**FEDERAL RULES**

F.R.C.P. Rule 11 ............................................................................................ 2

F.R.C.P. Rule 30(b)(6) ................................................................................. 10

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## I.  INTRODUCTION

Costco Wholesale Corporation ("Costco") submits this trial brief to address three specific issues, and to demonstrate that most, if not all, of the remaining claims can be deposed of without the need to select and try the case to a jury.

(1)   In order to avoid Plaintiffs again trying to relitigate issues already resolved, Costco wishes to reiterate that the Court's December 29, 2014, rulings on the parties' Motions *in Limine* mean that the only substantive issue which remains to be tried is whether Costco's Kashwere goods sold in Japan were actually created by or for the U.S. trademark holders, TMG Kreations, LLC and Kashwere, LLC ("TMG/Kashwere"), or whether they were "knockoffs" (goods manufactured without the approval or oversight of the trademark owner).[1]  In light of the Court's ruling on the "knockoff" issue, issues of quality differences and consumer confusion no longer are part of the case.

It is Plaintiffs' burden to establish that Costco's goods are not actual TMG/Kashwere goods, but rather are *Gucci*-type knockoffs, and Plaintiffs have no evidence whatsoever to support such a claim.  Moreover, Costco is able, if necessary, to present irrefutable evidence establishing that the Kashwere goods it sold were authentic TMG/Kashwere goods that originated with the trademark holders – including documentary evidence so clear that Plaintiffs have no basis under Rule 11 for pursuing this case.

(2)   Plaintiffs Sirius Corporation and Kashwere USAJPN, LLC no longer have any viable claims in the action; and

(3)   This Court lacks Subject Matter Jurisdiction over any remaining issue,

---

[1] Costco uses the term knockoffs to refer to goods often referred to as counterfeit, i.e. the type of goods at issue in *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284 (S.D.N.Y. 2003); as differentiated from so-called, non-genuine goods such as those at issue in *El Greco Leather Products Company, Inc. v. Shoe World, Inc.,* 806 F.2d 392 (2d Cir. 1992).

1  as any Plaintiff remaining in the case cannot satisfy the Ninth Circuit's three-part
2  test for extraterritorial application of the Lanham Act.

3

4  **II.    THE ONLY SUBSTANTIVE CLAIM REMAINING IS WHETHER**
5  **COSTCO'S KASHWERE GOODS WERE TMG/KASHWERE GOODS**
6  **OR KNOCKOFFS AND COSTCO WILL PRESENT IRREFUTABLE**
7  **EVIDENCE TO THAT EFFECT**

8  On December 29, 2014, the Court held a hearing on all parties' Motions *in*
9  *Limine* in this case.  As a result of the Court's rulings – in particular, on Costco's
10 Motion *in Limine* No. 3 To Exclude Evidence and/or Argument Regarding
11 Plaintiffs' Contention that Costco's Kashwere Goods are Not Genuine Kashwere
12 USAJPN LLC Goods or Differ from Genuine Kashwere USAJPN LLC Goods
13 (Dkt. # 46) and Costco's Motion *in Limine* No. 4 To Exclude Evidence and/or
14 Argument Regarding Plaintiffs' Contention that Costco's Kashwere Goods are Not
15 Genuine TMG/Kashwere Goods (Dkt. # 47) – the issues remaining to be tried have
16 been significantly narrowed.

17 The Court heard argument on Costco's Third and Fourth Motions *in Limine*
18 together.  (Transcript, 19:13).  Counsel for Costco, Norman H. Levine, framed the
19 issue raised by Costco's Third and Fourth Motions *in Limine* as whether Plaintiffs'
20 theory of liability was that Costco's goods were of inferior quality to those of
21 Plaintiffs, or whether Plaintiffs' theory was that Costco's goods were "knockoffs."

22 Because the transcripts set forth the Court's rulings so clearly, and because of
23 Costco's concern that Plaintiffs will nevertheless attempt to raise the issues yet
24 again, Costco will quote extensively from the transcript.

25         MR. LEVINE: There is an issue as to whether the goods are --
26 what I'll call counterfeit, for lack of a better word.  There's one of the

27
28

1 cases cited by counsel.  It's a Gucci case[2] where somebody was selling

2 -- we understand what counterfeit Gucci handbags are.

3    THE COURT: Yep.

4    [ * ]

5    MR. LEVINE: If there is a claim here that the Kashwere goods

6 that we sold, this item (indicating) is counterfeit, à la a fake Prada or

7 Gucci bag, that's one thing.  But what Counsel is talking about is, I

8 think, less counterfeit than what I'll call genuine.  And genuine is the

9 issue that's raised in cases such as the *El Greco*[3] case.  The --

10    THE COURT: Uh-huh.

11    MR. LEVINE: The concept of the *El Greco* case is that if a

12 trademark holder has a trademark and somebody else sells inferior

13 goods, the trademark owner can sue the seller of the inferior goods.

14 That's not the claim here.  Here, the claim is 180 degrees the opposite.

15 Here, the claim is we know who the trademark holder is.  The Court

16 has already ruled that TMG/Kashwere, LLC, the Illinois litigants who

17 are not here, hold the trademark.  And the goods that we claim we

18 sold, this item here (indicating), if it's not counterfeit, is goods that

19 came from TMG/Kashwere, LLC, the Illinois folks.  And the claim of

20 Mr. Klein is that his goods – he's the licensee.  Your Honor held that

21 in No. 15 -- Docket 15 says Kashwere, LLC, is the trademark holder.

22 Kashwere – Kashwere USAJPN, USA Japan, is the licensee.  Every

23 single case that I know of and certainly every single one cited by the

24 plaintiff holds that if the trademark holder, the licensor, has a

---

[2] Referring to *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, cited in note 1, *supra*.

[3] *El Greco Leather Products Company, Inc. v. Shoe World, Inc.*, cited in note 1, *supra*.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

trademark and the licensee sells goods that are nonconforming, there may be a claim. There is no case, nor could there logically be a case that says that the licensee can claim that the licensor's goods are nonconforming. If I own a restaurant and I sell Coca-Cola and I put a new ingredient in it and claim that I've made it better, I can't sue Coca-Cola because my product is better. Identical to that argument, if Mr. Klein's client takes this trademark item (indicating) and improves it, he can't turn around and assert an *El Greco* claim --

THE COURT: Right.

MR. LEVINE: -- against my client. And that's what he's trying to do. The essence of his claim is that he has a better Kashwere product than Kashwere itself. He's made a better Coca-Cola than Coca-Cola. And if the Court -- and I can go through them. But every single one of these cases--

[ * ]

THE COURT:.. I think what you're trying to separate is what you tried to separate when you first appeared for the pretrial conference.

MR. LEVINE: Yes.

THE COURT: <u>Are we talking about knockoffs? Are we talking about inferior quality?</u>

MR. LEVINE: Yes.

THE COURT: I think that's what you're --

MR. LEVINE: Yes. And knockoffs is another story. I'd like to address that next. But I want to talk about inferior quality. And it cannot be that I can sue Coca-Cola because my Coca-Cola is better. And it cannot be that he can sue Costco because his Kashwere is better because we bought from the one with superior rights. And in -- in *El*

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

*Greco*, it says, 'The holder of a trademark is entitled to require, as *El Greco* did here, that no merchandise be distributed without its first being inspected by the holder or its agent to ensure quality.' So unless Counsel can point the Court to a case which holds the opposite, that the trademark licensee is entitled to require that the licensor goods not be of inferior quality, that there is no claim for -- for -- for anything. We were -- as the trademark holder's successor, we're entitled to sell the trademark holder's goods without worrying that somebody else has altered them and can turn around and sue us.

Transcript, 20:24-24:1 (emphasis added).

Mr. Klein then pointed to the case of *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013) as a purported example of a case which held the opposite of the *El Greco* case cited by Mr. Levine, and which Plaintiffs argued supported their ability to recover on the "inferior quality" theory of liability. *Id.* at 24:8.

The Court, however, distinguished *Hokto* and ultimately held that Plaintiffs could not recover under the "inferior quality" theory. The Court held:

> THE COURT: All right. With respect to the quality issue, *Hokto*, okay, started off as a licensee but then was assigned the trademark rights.
>
> MR. KLEIN: Right. That's right.
>
> THE COURT: Assigned, which makes them in stronger stead. And I've ruled on this, and I'm not going back on it. So -- and the Seventh Circuit's opinion established that Plaintiffs cannot prevent third-party distributors from selling genuine TMG/Kashwere products in Japan. So the question is -- the right -- <u>the right to control the quality of the goods is limited to the trademark holder. And, quite clearly, I have ruled the plaintiffs are not the trademark holder...the</u>

1     <u>plaintiffs are barred from arguing that.</u>

2        [ * ]

3     THE COURT: … the quality of that is not to be litigated. Okay?

4     Because that is a right given to a holder, not a licensee. And

5     I'm finding that actually *Hokto Kinoko* supports that.

6 *Id*. at 31:8-20 and 32:9-11 (emphasis added).

7     The Court however, ruled that the "knockoff" theory remained viable:

8     THE COURT: But if we're talking about a genuineness issue,

9     that these are knockoffs because they have three tags, because they

10     were bought from, I don't know, whatever, that's a different issue.

11     That's a different issue. And I believe that that's an issue for the

12     jury…So the question is whether or not the -- the sweater that I'm

13     seeing so much of is genuine. Okay? Mr. Seltzer's going to say, no, he

14     knows. And Mr. Papile's going to say, 'But I bought them from' --

15     what is it? – 'TMG.' Okay? So that's my ruling on 3 and 4.

16 *Id*. at 31:22-32:8.

17     The Court later reiterated its ruling that the "inferior quality" theory of

18 liability had been precluded and that only the "knockoff" theory of liability remains

19 to be tried in connection with its rulings on the parties' proposed jury instructions:

20     MR. LEVINE: …I think that in light of the Court's ruling on our

21     Motion No. 3, Instruction 1.2 can be further narrowed. The Court has

22     ruled that there will be no evidence of the quality issue but there will

23     be evidence of the knockoff issue.

24     THE COURT: Right…

25 *Id*. at 33:21-25.

26     In light of the foregoing, the only substantive issue which remains to be tried

27 is whether Costco's Kashwere goods sold in Japan were not actual TMG/Kashwere

28 goods, but rather knockoffs. If Plaintiffs are unable to establish the goods are

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

knockoffs, then Costco is entitled to judgment with respect to all claims of all Plaintiffs.

Similarly, questions of consumer confusion are irrelevant to the remaining "knockoff" issue because, as Costco has repeatedly represented to the Court and Plaintiffs, if its goods did not originate with TMG/Kashwere, but are knockoffs, Costco will concede the issue of consumer confusion.[4] To put it another way, if Costco was selling TMG/Kashwere goods, Plaintiffs have no basis for raising the consumer confusion issue, because that issue can only be raised by the trademark holder. If Costco was selling knockoffs, there is no need to present evidence of confusion because "counterfeits, by their very nature, cause confusion." *Gucci America, Inc*., 286 F.Supp.2d at 287.

It is Plaintiffs' burden to establish by a preponderance of the evidence that Costco is selling knockoff Kashwere goods. If Plaintiffs can somehow make a prima facie showing that the goods are knockoffs, Costco will present conclusive evidence establishing that its goods are in fact actual TMG/Kashwere goods.

### III. CLAIMS OF ONLY ONE PLAINTIFF, FLAT BE, REMAIN TO BE TRIED

Plaintiffs' claims need to be analyzed plaintiff by plaintiff. When this analysis is done, it becomes clear that only one of the Plaintiffs still has a claim that can potentially go to trial.[5]

---

[4] Costco intends to submit a proposed stipulation on this issue in connection with its response to the Court's Order Presenting Modified Jury Instructions (Dkt. # 85).

[5] The desire to avoid precisely this analysis might explain Plaintiffs' objection to Form Instruction 1.5, which states, "You should decide the case as to each plaintiff separately. Unless otherwise stated, the instructions apply to all parties." The Court overruled Plaintiffs' objection to this instruction and ruled that it should be given. Transcript, 56:6-11.

A. The Claims of Sirius Are Based on Trademarks Which the Court Has Ruled Cannot be the Basis of a Claim.

Plaintiff Sirius is a Japanese corporation and a citizen of Japan. (FAC, ¶ 3). It is the sales subsidiary of Flat Be. (FAC, ¶ 4). The only substantive allegations of the First Amended Complaint relating to Sirius are that either it or Flat Be "own[s] a registered trademark for Kashwere goods in Japan under international class 35" (FAC, ¶ 5), and that "Costco Wholesale Corporation has infringed on Sirius's registered trademark Kashwére ™ in Japan." (FAC, ¶ 42). The Court has ruled that the trial will not include any claim against Costco for trademark infringement or any claim based on a Japanese trademark. (See Dkt. # 15; Dkt. # 32; Transcript, 15:3-16:17). These rulings resolve all claims asserted by Sirius, even if subject matter jurisdiction exists.

B. Kashwere USAJPN Has No Viable Claim.

1. Lack of Standing

The only American plaintiff is Kashwere USAJPN, a Wyoming limited liability company and a citizen of the State of Wyoming. (FAC, ¶ 1). Kashwere USAJPN is the "exclusive licensee of [the] federally registered international trademarks in class 23 and 24 for the trademark Kashwére ™ in Japan." (FAC, ¶ 6). As licensee, it may sell so-called Licensed Goods only in Japan and only through its exclusive distributor in Japan, Flat Be. (FAC, ¶ 22(b)). The First Amended Complaint alleges that Kashwere USAJPN is entitled to receive a royalty on sales of goods by Flat Be in Japan (FAC, ¶ 25), but as shown below, this allegation is false. It does not appear that Kashwere USAJPN manufactures or sells any goods.

Plaintiffs' Trial Brief on Extraterritorial Reach of the Lanham Act (Dkt. # 82) (the "Jurisdiction Brief") states, "Plaintiff Kashwere USAJPN, a United States entity and Pete Seltzer its member and a citizen of California, suffered injuries from lost royalties." Mr. Seltzer is not a party to this lawsuit, so his entitlement to

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

royalties is irrelevant.

Even if Kashwere USAJPN in fact was entitled to royalties, it would not have a right to sue Costco for lost royalties. Flat Be, not Kashwere USAJPN, is the party that can sue for damages relating to the licensed products. If both Kashwere USAJPN and Flat Be – licensor and licensee – could maintain an action based on the identical conduct and circumstances, Costco would be subjected to multiple liability for the same acts.

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), the Supreme Court stated that "We thus hold that a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff. That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id*. at 1391. Here, Kashwere USAJPN falls squarely within this limitation; the alleged injury to Kashwere USAJPN is a result of claimed injury to Flat Be that in turn allegedly reduced Kashwere USAJPN's royalties. Nothing in the *Lexmark* case suggests that the result should be different because Plaintiffs assert false designation of origin, not false advertising.

2. No Damages

Not only do Kashwere USAJPN's claims fail because of lack of standing, but they also fail because it cannot show damages, direct or indirect. As set forth above, the premise of its claim is that it "suffered injuries from lost royalties." However, Mr. Seltzer – in his capacity as the representative of Kashwere USAJPN under F.R.C.P. 30(b)(6) – testified in his deposition taken in the Illinois Litigation[6]

---

[6] *TMG Kreations, LLC et al. v. Peter Seltzer; Flat Be Co. Ltd., et al.*, No. 12-CV-05018 (N.D. Ill.).

1  on July 19, 2013, that Kashwere USAJPN is not entitled to receive royalties on Flat
2  Be's sales.  A different Seltzer company, Dyljac Kashwere LP, which is not a party
3  to this action, is the entity arguably entitled to royalties.  For example, Mr. Seltzer
4  testified, at page 342, lines 5-22:[7]

      Q.·· If you can go to Page 20 of your counterclaim, Paragraph
26, at the bottom of 20.  When it says, "In 2010, Peter Seltzer formed
counter-claimant Kashwere USA Japan, LLC, and assigned rights
under the contract with Defendants ·to that entity, including the right
to receive royalty payments under the exclusive trademark ·license
agreement and the Flat Be agreement to Kashwere USA Japan, LLC."
Is that allegation there saying that any royalty payments were
also assigned to Kashwere USA Japan, LLC?

      A.·· No.· As I explained earlier, a Flat ·Be -- yeah, Flat Be's
accountant didn't want to do it that way.· They wanted to wire to a
company they already knew.· So they wanted to wire to my Dyljac
Kashwere LP.· <u>Kashwere USAJPN receives no royalty payments, no
wires, nothing</u>.  (emphasis added).

The Seventh Circuit opinion similarly states that "Although USAJPN is the nominal license holder, <u>Flat Be pays royalties to Seltzer rather than to USAJPN</u>." *TMG Kreations, LLC v. Seltzer*, 771 F.3d 1006, 1009 (7th Cir. 2014) (emphasis added).  This is, of course, binding as collateral estoppel.  See Transcript, 11:12-14 and 16:12-16.

As Kashwere USAJPN had no right to royalties, it could not have been deprived of royalties by reason of any conduct of Costco.[8]  As such, it has no claim

---

[7] The relevant portions of the transcript are attached hereto as Exhibit "A."
[8] The transcript sets forth at page 3 that Mr. Klein was present at the deposition, so he must have known that the allegations of paragraph 25 of the First Amended Complaint, which was filed on December 24, 2013, five months after the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

herein.

C. Flat Be, the Only Party Whose Claims Remain to be Tried, is a Japanese Corporation with No Connection to the United States

According to the First Amended Complaint, Plaintiff Flat Be is a Japanese corporation and a citizen of Japan. (FAC, ¶ 2). On June 5, 2006, Flat Be entered into an exclusive distribution agreement with Kashwere Comforts, under which Flat Be allegedly became the exclusive distributor of the so-called Licensed Goods in Japan (and nowhere else). (FAC, ¶ 18). Flat Be sells the products which are the subject of this action "exclusively in Japan under its exclusive distribution and license agreement." (FAC, ¶ 19). It contracts with a factory in Taiwan to manufacture its Kashwere products. (FAC, ¶ 20). Other than being a party to a contract with an American company which grants it certain rights, Flat Be apparently has no connection with the United States. The conduct which allegedly caused it damages, i.e. Costco's sale of Kashwere goods in Japan which allegedly caused confusion to consumers in Japan, occurred entirely in Japan. Thus, as shown below, to assert a substantive claim, Flat Be would need to establish subject matter jurisdiction, and it cannot do so.

## IV. NO SUBJECT MATTER JURISDICTION EXISTS

Costco demonstrated in its Brief and Proposed Jury Instruction Regarding Subject Matter Jurisdiction, filed December 31, 2014 (Dkt. # 84) that the extraterritorial application of the Lanham Act is an issue of subject matter jurisdiction. Subject matter jurisdiction also needs to be analyzed plaintiff by plaintiff.

Plaintiffs' Jurisdictional Brief (Dkt. # 82), refers to Kashwere USAJPN, but does not even mention Flat Be or Sirius. As set forth above, they are Japanese

---

deposition, as well as that in his Trial Brief on Extraterritorial Reach of the Lanham Act, filed last week, were false.

corporations and citizens, with no operations in the United States, and can sell Kashwere goods only in Japan. Plaintiffs' failure to address Flat Be and Sirius in its brief suggests that they recognize the jurisdictional problem.

As discussed above, regardless of which of the Plaintiffs remain, the only substantive claim remaining in this case is that Costco Japan sold knockoffs of Kashwere goods. It is common knowledge that knockoffs of well-known brands are readily available in many foreign countries. Nothing in the Lanham Act or the cases interpreting it suggests that the American federal courts should be the forum for addressing such sales occurring in foreign countries.[9]

Plaintiffs mischaracterize Judge Fisher's ruling in *Kashwere USAJPN v. TMG Kreations*, CV-12-4815 DSF, when they assert that she ruled that "the extraterritorial reach of the Lanham Act allowed Kashwere USAJPN to sue in California for sales of infringing goods in Japan." Judge Fisher's Order (Dkt. # 36) set forth that "Moving Defendants presented no affidavits or extrinsic evidence showing that extraterritorial application is inappropriate based on the underlying facts of the case," and that the allegations of the complaint were sufficient to establish jurisdiction. Those allegations included trademark infringement claims that have now been dismissed from this case. Moreover, Costco intends, to the extent necessary, to introduce extrinsic evidence.

Ninth Circuit case law recognizes that the extraterritorial coverage of the Lanham Act turns on a three-part test: "(1) the alleged violations must create some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority."

---

[9] There is also the separate question of whether Costco Wholesale Corporation can be held liable for sales by its subsidiary Costco Japan in Japan. That, however, is a question of liability, not jurisdiction.

The third part of the test turns on seven factors,[10] which are discussed below. *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir.1985) (citing *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 549 F.2d 597 (9th Cir.1976).

The three parts of the test are stated in the conjunctive – the second and third prongs are separated by the word "and." All three parts of the test must be satisfied to establish jurisdiction.

Application of the test to this case demonstrates that jurisdiction is absent. Plaintiffs rely on a series of cases alleging trademark infringement. Whatever basis there is to assert jurisdiction in such cases because of the interest of American courts in protecting American trademarks is absent in this case, which seeks to protect foreign consumers against confusion with respect to goods as to which Plaintiffs hold no intellectual property rights.

Plaintiffs cite *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612-613 (9th Cir. 2010). Plaintiff, Mike Love, a Nevada resident and original member of the Beach Boys, sued Brian Wilson, the leader of the group who wrote most of its songs, and others based on the distribution in Great Britain of a CD which contained solo performances of Beach Boys songs by Wilson and which allegedly infringed on Love's U.S. trademark. They were manufactured in Germany by a London manufacturer, and none of them ever entered the U.S. market. The cover included photographs of the Beach Boys, including Love. 611 F.3d at 613. Love

---

[10] "[1] [T]he degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad." *Star–Kist Foods, Inc.*, 769 F.2d at 1395, citing *Timberlane Lumber Co.*, 549 F.2d 597.

alleged that the CDs caused confusion abroad, and resulted in reduced ticket sales for his U.S. tour, creating an impact on U.S. commerce. *Id*. The Ninth Circuit found no jurisdiction, ruling that even if there was confusion abroad, it would be too great a stretch to infer such overseas confusion resulted in lost ticket sales in the U.S. *Id*. Here, any confusion regarding the products in Japan cannot cause confusion in the U.S., where Plaintiffs have no right to make sales.

Plaintiffs misstate the holding in *Pinkberry, Inc. v. JEC Int'l Corp.*, CV 11-6540 PSG (PJWx), 2011 WL 6101828 (C.D. Cal. Dec. 7, 2011). In fact, they misstate the holding about as much as it is possible to misstate a holding. Plaintiffs state that *Pinkberry* "held that Plaintiff[s] could maintain their action in the United States District Court in California" (Jurisdiction Brief, p.3), when it held exactly the opposite: "After considering the moving and opposing papers, the Court GRANTS the motion to dismiss the federal claims for lack of subject matter jurisdiction …" *Pinkberry, Inc.*, 2011 WL 6101828 at *1.

While Plaintiffs are correct when they state that *Pinkberry* held (as Plaintiffs argue here) that "the harm from Defendants' acts abroad has some effect on U.S. commerce," it more significantly held that Plaintiffs could not satisfy the third factor required for jurisdiction, i.e. the Court held that the interests of and links to American foreign commerce were not sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Id*. at *8 and *21. Those factors weigh even more heavily against the exercise of jurisdiction here than in *Pinkberry*:

    1.    <u>Degree of conflict</u>. This is not a trademark infringement case, so there is no reason for an American court to intervene to protect a U.S. trademark or a U.S. trademark holder. A Japanese court would have no reason to apply the Lanham Act or California law to the conduct alleged here, and a company doing business in Japan would have no reason to conform to American tort law. On the other hand, a Japanese court would have every reason to apply Japanese law to the

alleged conduct – all of which occurred in Japan. Therefore, to the extent there is a conflict, Japanese law should apply, which weighs against exercising jurisdiction.

       2.       <u>Nationality</u>. In *Pinkberry*, the two individual defendants were citizens of Japan, but residents of California. *Id*. at *15-16. One of the two corporate defendants had stores and its corporate headquarters in California and the other had an office here. In the instant case, Flat Be and Sirius are Japanese corporations which apparently have no operations, employees or offices in the United States. The third, Kashwere USAJPN, is a domestic corporation, which does not appear to have any employees, operations or revenue whatsoever. This factor weighed in favor of exercising jurisdiction in *Pinkberry*, but not here.

       3.       <u>Achieving compliance</u>. *Pinkberry* held that, because the defendants were incorporated in, or had substantial ties to, the United States, this factor weighed in favor of extraterritorial application of the Lanham Act. *Id*. at *16-17. Here, because the sales were by Costco Japan, not by Costco Wholesale Corporation, this factor weighs against extraterritorial application.

       4.       <u>Relative Significance of Effects</u>. In *Pinkberry*, because the sales occurred in Japan, "the effect on the United States 'is relatively insignificant' as compared with the effect on" Japan. *Id*. at *17. The Court found this factor to weigh against jurisdiction, stating that "[a]ny sale of frozen yogurt to consumers in Japan, even by a corporation based in the United States, has a greater effect on Japanese commerce than on U.S. foreign commerce." *Id*. This factor weighs against jurisdiction here for the same reasons.

       5 and 6.       <u>Purpose to Harm or Affect U.S. Commerce and Foreseeability</u>. *Pinkberry* considered these factors together. The Court found these factors neutral because defendant's registration of a trademark in Japan balanced the harm from using Plaintiff's U.S. trademark in Japan. Here, Plaintiffs had no U.S. trademark, so there is no basis for concluding that defendant intended to affect U.S. commerce or that it was foreseeable that its sales would do so. Both of these

factors weigh against jurisdiction.

7. <u>Relative Importance</u>. In *Pinkberry*, this factor was neutral because, although defendant registered the trademark in Japan, it directed the activities from the U.S. *Id*. at *20. Here, the most important act was the sale of goods in Japan, and the legal principle at issue is protection of consumers from confusion. There is no reason why an American court should decide what protection Japanese consumers should receive or what relief should be granted if they were in fact confused. This factor weighs toward denial of jurisdiction.

The factors weigh more heavily in favor of denial of jurisdiction than in *Pinkberry*.

Plaintiffs also misstate the holding of *Reebok Intern, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir.1992), stating that the Ninth Circuit based jurisdiction on a finding that defendants in the United States organized and directed the manufacture and sale of counterfeit shoes in Mexico and this caused some effect on U.S. foreign commerce. As *Love* recognized, 611 F.3d at 613, there was more to it than that: the Ninth Circuit based its finding of jurisdiction on the fact that defendant "organized and directed [the deception] from the United States," and that it knew that the deceptive products, sold primarily in Mexican border towns such as Tijuana, "went back to the United States with regular frequency," and that sales of the "genuine" product decreased in the United States." Plaintiffs cannot show that any of the deceptive products "went back to the United States," or that Plaintiffs' U.S. sales decreased, because Plaintiffs have no right to sell products in the United States.

The Court likewise found no jurisdiction in a lawsuit against a company which purchased goods at Trader Joe's in Bellingham, Washington, and resold them in its Pirate Joe's store in Vancouver, British Columbia. *Trader Joe's Co. v. Hallatt*, 981 F. Supp. 2d 972 (W.D. Wash. 2013). The Court found the conduct

more significant in Canada, where the products were re-sold, than in the United States, where they were purchased.

## V. CONCLUSION

Of the three Plaintiffs:

1. Sirius sues solely based on a trademark which the Court has held it does not hold, and has no connection to the United States that would confer subject matter jurisdiction;

2. Flat Be has no connection to the United States that would confer subject matter jurisdiction; and

3. Kashwere USAJPN has no direct claim that would confer standing, no right to royalties that would entitle it to damages, and no basis for claiming subject matter jurisdiction based on transactions that occurred only in Japan.

Even if Plaintiffs could overcome all of these hurdles, they cannot prevail unless they prove that the goods were knockoffs. Plaintiffs must know that they cannot prove that, because they have seen all of the documents which show the source of the goods.

Accordingly, Costco believes that all issues can be resolved without the assistance of a jury. If a jury trial is nevertheless held, Costco will establish facts that cannot reasonably be disputed, i.e. that the goods it sold originated with Kashwere / TMK, and are not knock-offs. Plaintiffs have no basis whatsoever to argue otherwise.

DATED: January 6, 2015

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: /s/ Norman H. Levine
NORMAN H. LEVINE (SBN 061884)
Attorneys for Defendant COSTCO WHOLESALE CORPORATION